UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


THE COURTLAND COMPANY, INC.,
a West Virginia Business
Corporation,

      Plaintiff,

v.                          Civil Action No. 2:18-cv-01230

UNION CARBIDE CORPORATION,
a New York Corporation,

      Defendant.


THE COURTLAND COMPANY, INC.,
a West Virginia Business
Corporation,

      Plaintiff,

v.                          Civil Action No. 2:19-cv-00894

UNION CARBIDE CORPORATION,
a New York Corporation,

      Defendant.


MEMORANDUM OPINION & ORDER


      Pending in these related cases are the plaintiff's motion to strike the defendant's notice regarding potential nonparty fault and supplemental notice regarding potential nonparty fault, filed in Courtland Co. Inc. v. Union Carbide Corp. ("Courtland I"), 2:18-cv-01230 (S.D.W. Va.) on June 19, 2020 (ECF No. 140), and the plaintiff's response to and motion

to strike the defendant's notice regarding potential nonparty
fault, filed in Courtland Co. Inc. v. Union Carbide Corp.
("Courtland II"), 2:19-cv-00894 (S.D.W. Va.) on June 16, 2020
(ECF No. 55).

## I.    Background

The plaintiff and the defendant are corporations that
own parcels of real property near Davis Creek in Kanawha County,
West Virginia.  See Courtland I, ECF No. 1 ¶¶ 4-5, 14; ECF No.
21 ¶¶ 4-5, 14; see also Courtland II, ECF No. 1 ¶¶ 5-6, 15, 25;
ECF No. 82 ¶¶ 5-6, 15, 25.  In Courtland I, the plaintiff
alleges that the defendant has used one of its properties
adjacent to the plaintiff's property to store hazardous and
toxic materials, which have been released into the nearby
environment including the plaintiff's property.  See Courtland
I, ECF No. 1 ¶¶ 1, 14-46.  In Courtland II, the plaintiff
alleges that the defendant has used two other properties, also
adjacent to the plaintiff's property, to likewise store
hazardous and toxic materials that have been released into the
nearby environment including the plaintiff's property.  See
Courtland II, ECF No. 1 ¶¶ 1, 14-57.

Based on these allegations, the plaintiff initiated
suit against the defendant in Courtland I by filing a complaint
on August 15, 2018, and effected service of process on the

defendant on August 21, 2018. <u>See</u> <u>Courtland I</u>, ECF No. 1; ECF
No. 7.  In <u>Courtland II</u>, the plaintiff initiated suit against
the defendant by filing a complaint on December 13, 2019, and
effected service of process on the defendant on December 17,
2019.  <u>See</u> <u>Courtland II</u>, ECF No. 1; ECF No. 4.

 In both its complaints, the plaintiff asserts three
federal causes of action:  Count I seeks recovery of response
costs and declaratory relief under the Comprehensive
Environmental Response, Compensation, and Liability Act of 1980
("CERCLA"), 42 U.S.C. §§ 9607(a), 9613(g); Count II seeks
citizen-suit relief for violations of § 7002(a)(1)(A) of the
Resource Conservation and Recovery Act of 1976 ("RCRA"), 42
U.S.C. § 6972(a)(1)(A), and the West Virginia Hazardous Waste
Management Act; and Count III seeks citizen-suit relief for
judicial abatement of an imminent and substantial endangerment
under § 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B).  <u>See</u>
<u>Courtland I</u>, ECF No. 1 ¶¶ 47–73; <u>Courtland II</u>, ECF No. 1 ¶¶ 58-
88.  Both complaints also assert state-law cause of action,
including judicial abatement of a public nuisance; judicial
abatement of a public nuisance <u>per se</u>; private nuisance;
negligence; gross negligence; and strict liability.[1]  <u>See</u>

---

[1] The two complaints assert the same claims, with one exception:
The complaint in <u>Courtland II</u> asserts a claim in its Count IV
for judicial abatement of a public nuisance <u>per se</u>, <u>see</u>

<u>Courtland I</u>, ECF No. 1 ¶¶ 74–108; <u>Courtland II</u>, ECF No. 1 ¶¶ 89–134.[2]

On February 15, 2019, the defendant filed, within the 180-day period prescribed by state statute, a notice of designation of at-fault nonparties in <u>Courtland I</u>, pursuant to W. Va. Code § 55-7-13d(a).  <u>See</u> <u>Courtland I</u>, ECF No. 37. Therefore, the defendant provided notice on information and belief that an unknown number of unnamed nonparties may be wholly or partially at fault for the claims brought by the plaintiff.  <u>See</u> <u>id.</u> at 1.  The defendant explained that, because discovery was in a nascent stage, it had not yet identified the nonparties but requested that the court direct the factfinder in this matter to consider the fault of all nonparties and proportionally reduce the plaintiff's recovery against the defendant for the fault chargeable to the nonparties, pursuant to § 55-7-13d.  <u>See</u> <u>id.</u> at 1–2.

On June 10, 2020, nearly four months beyond the 180-day period, the defendant filed a supplemental notice of

_____

<u>Courtland II</u>, ECF No. 1 ¶¶ 98–107, but the complaint in <u>Courtland I</u> does not.  Because of this difference, most of the corresponding state-law claims in the separate complaints do not share the same "Count" number.

[2] The court dismissed the plaintiff's claim for negligence <u>per se</u> in both cases.  <u>See</u> <u>Courtland I</u>, ECF No. 163 at 18; <u>Courtland II</u>, ECF No. 75 at 45–46, 55.

designation of at-fault nonparties in Courtland I.  See id., ECF
No. 139.  In this supplemental notice, based largely on the
deposition testimony of the plaintiff's Fed. R. Civ. P. 30(b)(6)
designee, the defendant identifies three nonparty entities it
asserts may be wholly or partially at fault for the claims
alleged in the complaint.  See id. at 1–3.  Specifically, the
defendant identifies (1) Westvaco as a former owner of the
plaintiff's property that stored coal there prior to the
plaintiff's purchase of the property; (2) Raynes & Sons, Raynes
and Company, CB Shop Company, and Parsons Contracting as lessees
of a portion of the plaintiff's property that has been used by
them to store concrete, dirt, millings, asphalt chunks,
barriers, rebar or steel materials, fill dirt, and heavy
equipment including a diesel fuel tank, a crusher, and a
screener; and (3) CSX Transportation, which maintained an active
rail line along the southern boundary of the plaintiff's
property and may have stacked or dumped materials on the
property.  See id.  The defendant further asserts on information
and belief that an unknown number of additional unnamed
nonparties may be at fault and requests that the court direct
the factfinder to consider the fault of the nonparties and
reduce any recovery against the defendant in proportion to the
nonparties' fault, pursuant to § 55-7-13d.  See id. at 3.

Also, on June 10, 2020, in Courtland II, the defendant filed, within the 180-day period, a notice regarding potential nonparty fault pursuant to § 55-7-13d(a).  See Courtland II, ECF No. 55.  Therein, again based on the plaintiff's Rule 30(b)(6) designee's testimony, the defendant identifies the same nonparty entities as in Courtland I as wholly or partly at fault for the plaintiff's claims and asserts on information and belief that an unknown number of additional unnamed nonparties may be likewise at fault.  See id. at 1–3.  As in Courtland I, the defendant requests that the court direct the factfinder to consider the fault of the nonparties and proportionally reduce the amount of recovery against the defendant pursuant to § 55-7-13d.  See id. at 3.

In both cases, the plaintiff filed motions to strike the defendant's notices regarding potential at-fault nonparties. See Courtland I, ECF No. 140; Courtland II, ECF No. 55.  The motions have been fully briefed and are ripe for disposition.

## II.  Legal Standard

The parties do not discuss the legal standard that should guide the court's consideration of the plaintiff's motions to strike.  Traditionally, a motion to strike is a "procedural mechanism by which a party challenge[s] the sufficiency of a pleading or of evidence, with a goal toward

6

removing the pleading . . . or [evidence] from the record, so
that it [i]s not considered by a judge or jury." <u>Kelly v. FedEx
Ground Package Sys., Inc.</u>, No. 3:10-cv-01265, 2011 WL 1584764,
at *2 (S.D.W. Va. Apr. 26, 2011); <u>see also</u> <u>Strike</u>, <u>Black's Law
Dictionary</u> (11th ed. 2019) (defining "strike" to mean "expunge,
as from a record").

The Federal Rules of Civil Procedure expressly provide
procedures for striking pleadings from the record. <u>See</u> Fed. R.
Civ. P. 12(f), 14(a)(4), 37(b)(2)(A)(iii). Rule 12(f) allows
the court to strike pleadings of "an insufficient defense or any
redundant, immaterial, impertinent, or scandalous matter." Fed.
R. Civ. P. 12(f). Rule 12(f) motions to strike "are generally
viewed with disfavor 'because striking a portion of a pleading
is a drastic remedy and because it is often sought by the movant
simply as a dilatory tactic.'" <u>Waste Mgmt. Holdings, Inc. v.
Gilmore</u>, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A Charles
Alan Wright et al., <u>Federal Practice and Procedure</u> § 1380, 647
(2d ed. 1990)). A decision from this district adequately sets
forth the standards for considering a Rule 12(f) motion:

> the standard by which courts judge Rule 12(f) motions
> imposes a sizable burden on the movant. . . . Before
> granting a motion to strike, a court must be convinced
> there are no questions of fact, that any questions of
> law are clear and not in dispute, and that under no
> set of circumstances could the defense succeed. It is
> difficult to establish a defense is clearly
> insufficient. Even where technically appropriate and

> well-founded, motions to strike defenses as
> insufficient are often denied in absence of a showing
> of prejudice to the moving party.

Clark v. Milam, 152 F.R.D. 66, 70 (S.D.W. Va. 1993) (internal

quotation marks and citations omitted).[3]

Beyond Rule 12(f), federal courts also have inherent

authority to strike a document when the party submitting it has

not complied with the rules or the court's orders for doing so.

See Iota Xi Chapter of Sigma Chi Fraternity v. Patterson, 566

F.3d 138, 150 (quoting United States v. Moussaoui, 483 F.3d 220,

236 (4th Cir. 2007)) (citing United States v. Hudson, 11 U.S. (7

Cranch) 32, 34 (1812)).  However, "'[b]ecause of their very

potency, inherent powers must be exercised with restraint and

discretion.'"  Anusie-Howard v. Todd, 920 F. Supp. 2d 623, 627–

28 (D. Md. 2013) (quoting Chambers v. NASCO, Inc., 501 U.S. 32,

44 (1991)).

Ultimately, the court need not determine which legal

standard should apply to the plaintiff's motions to strike

because, as set forth below, the defendant has agreed that § 55-

7-13d is inapplicable to certain claims and the plaintiff's

---

[3] Additionally, the Rules provide procedures for striking a
document when it is not signed by counsel or a pro se party.
See Fed. R. Civ. P. 11(a), 26(g)(2).  The notices at issue here
have been signed by counsel, see Courtland I, ECF No. 37 at 2–3;
id., ECF No. 139 at 4; Courtland II, ECF No. 53 at 4, and the
plaintiff does not argue they should be stricken due to a lack
of a signature pursuant to Rules 11 or 26(g)(2).

arguments are not sustainable with respect to the remaining claims.

### III. Discussion

The plaintiff argues that the defendant's notices should be stricken for two reasons.  The court addresses the arguments in turn.

A.    <u>Applicability of Comparative Fault Statute</u>

The plaintiff argues that West Virginia's comparative fault statute, W. Va. Code §§ 55-7-13a to -13d, pursuant to which a defendant may seek to reduce the recovery against it based on the fault of nonparties, <u>see</u> W. Va. Code § 55-7-13d(a)(1), (3), does not apply to this case.

(1)   <u>*Federal claims (Counts I through III) and state-law equitable-relief claims*</u>

First, the plaintiff argues that the statute does not apply to Counts I through III of its complaints, <u>i.e.</u>, its federal statutory claims brought under CERCLA and RCRA.  The plaintiff further argues that, by its terms, the statute does not apply to any of its claims — specifically, its RCRA claims (Counts II and III of both complaints) as well as its state-law claims for judicial abatement of public nuisance (Count IV of both complaints) and judicial abatement of public nuisance <u>per</u>

9

se (Count V of the Courtland II complaint) — that seek
injunctive relief rather than damages.  See W. Va. Code § 55-7-
13a(b) ("In any action based on tort or any other legal theory
seeking damages for personal injury, property damage, or
wrongful death, recovery shall be predicated upon principles of
comparative fault and the liability of each person, including
plaintiffs, defendants and nonparties who proximately caused the
damages, shall be allocated to each applicable person in direct
proportion to that person's percentage of fault."); see also
Courtland I, ECF No. 1 at 24–30, 36–37 (seeking injunctive
relief for Counts II, III, and IV); Courtland II, ECF No. 1 at
27–40, 47 (seeking injunctive relief for Counts II, III, IV, and
V).

        The defendant responds that it "does not seek
application of [West Virginia's comparative fault statute] to
[the] [p]laintiff's claims under CERCLA[ or] RCRA," i.e., Counts
I through III of both complaints.  Courtland I, ECF No. 141 at 4
n.4; accord Courtland II, ECF No. 56 at 4 n.3.  The defendant
further states that it "does not seek application of the West
Virginia [comparative fault] statute[] to [the] [p]laintiff's
claims for public nuisance," i.e., Count IV of the Courtland I
complaint and Counts IV and V of the Courtland II complaint, to
the extent the plaintiff seeks injunctive relief based on those

10

claims.  Courtland I, ECF No. 141 at 6; accord Courtland II, ECF
No. 56 at 6.  In reply, the plaintiff confirms that it seeks
only injunctive relief, and not damages, with respect to its
public-nuisance claims.  See Courtland I, ECF No. 142 at 5; see
also Courtland II, ECF No. 59 at 2 n.2, 4 (stating that the
plaintiff's motion for preliminary injunction does not involve
any claims for which damages are sought); id., ECF No. 90 at 3,
9, 29–39 (premising motion for preliminary injunction in part on
public-nuisance claims).

Because the defendant does not seek to apply West
Virginia's comparative fault statute to the plaintiff's federal
statutory claims or state-law public nuisance claims, i.e.,
Counts I through IV of the Courtland I complaint and Counts I
through V of the Courtland II complaint, there is no need for
the court to determine whether the statute might apply to those
claims.

The remaining question is whether the parties'
agreement that the statute does not apply to these claims
provides any basis for striking the defendants' notices.  It
does not.  Under Rule 12(f), even assuming that striking the
notices with respect to these claims would otherwise be
appropriate, the plaintiff has not shown that it is in any way
prejudiced by their remaining in the record.  See Clark, 152

11

F.R.D. at 70; see also Baron v. DirecTV, LLC, 233 F. Supp. 3d 441, 445 (D. Md. 2017) ("If no valid basis exists for any of the defenses, . . . then the pled defenses will have little impact on the litigation going forward. . . .  [Thus,] no substantial prejudice can be discerned from leaving [the] affirmative defenses in the case at this juncture."); Charles Alan Wright et al., Federal Practice and Procedure § 1380 (3d ed. 2020) ("[I]n order to succeed on a Rule 12(f) motion to strike[,] . . . it must be shown that the allegations['] presence in the pleading throughout the proceeding will be prejudicial to the moving party.").  Similarly, the fact that the defendant's notices ultimately have no bearing on some of the claims might provide a basis to not credit or consider the notices with respect to those claims, but it provides no basis to strike them from the record pursuant to the court's inherent authority.  See English v. CSA Equip. Co., LLC, No. 05-0312-WS-B, 2006 WL 2456030, at *2 (S.D. Ala. Aug. 22, 2006) ("[E]ven if . . . every one of [a party]'s challenged arguments is incorrect, [this does] no[t] show[] why the draconian step of striking [the party]'s arguments is appropriate. . . . In the overwhelming majority of cases, the proper judicial response to a factually unsupported or legally defective argument is simply not to credit it.").

### (2)   *Statutory exceptions*

Next, the plaintiff argues that West Virginia's comparative fault statute does not apply to any of its claims based on two statutory exceptions — a criminal-conduct exception and a hazardous-waste exception — found in W. Va. Code § 55-7-13c.  Section 55-7-13c states generally that, "[i]n any action for damages, the liability of each defendant for compensatory damages shall be several only and may not be joint," and "[e]ach defendant shall be liable only for the amount of compensatory damages allocated to that defendant in direct proportion to that defendant's percentage of fault."  W. Va. Code § 55-7-13c(a).  The section provides several exceptions to this general rule.  For instance, "[n]otwithstanding any other provision of this section," "[a] defendant whose acts or omissions constitute criminal conduct" or "an illegal disposal of hazardous waste, as described in [W. Va. Code § 22-18-3]" and who proximately causes the plaintiff's damages "shall be jointly and severally liable."  W. Va. Code § 55-7-13c(h).  The plaintiff argues that the defendant's actions alleged in the complaints constitutes criminal conduct as well as an illegal disposal of hazardous waste and thus asserts that the defendant cannot have any recovery against it reduced in proportion to the fault of any nonparties under § 55-7-13d.

Inasmuch as the plaintiff's argument is based on the allegations in its complaints rather than on evidence, it is premature to consider at this juncture.  Cf. W. Va. Code § 55-7-13d(d) (contemplating that fault must be alleged and proved). Thus, to the extent the motions seek to strike the notices based on the criminal-conduct and hazardous-waste exceptions, they are denied, and the plaintiff may raise the exceptions later at an appropriate time.

In sum, the court concludes that the plaintiff has not provided a reason for the court to strike the defendant's notices based on the applicability of West Virginia's comparative fault statute.

B.    Compliance with Statutory Notice Procedures

Next, the plaintiff argues that the defendant failed to comply with the procedural requirements found in the West Virginia comparative fault statute for providing notice of at-fault nonparties.  Section 55-7-13d provides:

> Fault of a nonparty shall be considered . . . if a
> defending party gives notice no later than one hundred
> eighty days after service of process upon said
> defendant that a nonparty was wholly or partially at
> fault.  Notice shall be filed with the court and
> served upon all parties to the action designating the
> nonparty and setting forth the nonparty's name and
> last known address, or the best identification of the
> nonparty which is possible under the circumstances,
> together with a brief statement of the basis for
> believing such nonparty to be at fault[.]

W. Va. Code § 55-7-13d(a)(2).  The plaintiff argues that the
defendant failed to comply with the requirements of this
provision.

### (1)  _Statutory notice period_

First, the plaintiff argues that the defendant's
notice in Courtland I was not provided within 180 days of
service of process.  Although it is undisputed that the
defendant provided an initial notice that an unspecified number
of unnamed nonparties may be at fault within the 180-day period,
see ECF No. 37, the plaintiff points out that the defendant did
not identify any at-fault nonparties until its supplemental
notice that was provided long after the expiration of the 180-
day period.  As to Courtland II, the plaintiff does not dispute
that the notice was served within the 180-day period but insists
that the notice did not comply with § 55-7-13d(a)(2) for other
reasons.

The defendant responds, in part, that the 180-day
notice requirement is inapplicable in a federal lawsuit under
the Erie R.R. Co. v. Tompkins, 304 U.S. 64, 72-73 (1938),
doctrine.  Under the Erie doctrine, a federal court sitting in
diversity or supplemental jurisdiction applies state substantive
law and federal procedural law.  United Mine Workers of Am. v.
Gibbs, 383 U.S. 715, 726 (1966); Hanna v. Plumer, 380 U.S. 460,

465–66 (1965); <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 72–73 (1938)); <u>Harbeck v. Smith</u>, 814 F. Supp. 2d 608, 620 (E.D. Va. 2011).  "Classification of a law as 'substantive' or 'procedural' for <u>Erie</u> purposes is sometimes a challenging endeavor."  <u>Gasperini v. Ctr. For Humanities, Inc.</u>, 518 U.S. 415, 428 (1996).  However, it is well-settled that, where a state law conflicts with a Federal Rule of Civil Procedure, the federal courts must apply the Federal Rule unless the rule exceeds either the rulemaking authority bestowed by Congress in the Rules Enabling Act, 28 U.S.C. § 2072, or constitutional bounds.  <u>See</u> <u>Shady Grove Orthopedic Assocs., P.A. v. Allstate Inc. Co.</u>, 559 U.S. 393, 398 (2010); <u>Burlington N. R.R. Co. v. Woods</u>, 480 U.S. 1, 5 (1987); <u>Hanna</u>, 380 U.S. at 470–74; <u>see also</u> <u>Sibbach v. Wilson & Co.</u>, 312 U.S. 1, 14 (1941) (applying the Federal Rule rather than conflicting state rule when the Federal Rule "really regulates procedure" rather than modifies substantive rights under state law).  When such a conflict is present, the rules in <u>Erie</u> and its progeny for determining whether a state law is substantive or procedural[4] do not come into play.  <u>See</u> <u>Shady Grove</u>, 559 U.S. at 398 ("We do not wade

---

[4] These rules require a federal court to consider whether the state law is outcome determinative in the sense that the court's refusal to apply it would unduly foment forum-shopping and result in inequitable administration of the laws.  <u>See</u> <u>Hanna</u>, 380 U.S. at 467–68.

into <u>Erie</u>'s murky waters unless the federal rule is inapplicable or invalid."); <u>Hanna</u>, 380 U.S. at 469–70 (explaining the "assumption that the rule of <u>Erie</u> . . . constitutes the appropriate test of the validity and therefore the applicability of a Federal Rule of Civil Procedure" is "incorrect").[5]

A Federal Rule and a state law conflict if they are in "direct collision." <u>Hanna</u>, 380 U.S. at 472. "[D]irect collision," however, does not require that the "[F]ederal [Rule] and state law be perfectly coextensive and equally applicable to the issue at hand." <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 26 n.4 (1988). Instead, the court is to assess first

---

[5] Although not discussed by the parties, federal courts in Michigan and Arizona have addressed state-law provisions requiring notice of nonparty fault similar to § 55-7-13d(a)(2) and have concluded that those provisions' deadlines should be enforced in federal lawsuits. <u>See, e.g.</u>, <u>Greenwich Ins. Co. v. Hogan</u>, 351 F. Supp. 2d 736, 737–40 (W.D. Mich. 2004); <u>Wester v. Crown Controls Corp.</u>, 974 F. Supp. 1284, 1286–88 (D. Ariz. 1996). Both <u>Hogan</u> and <u>Wester</u>, which were decided before <u>Shady Grove</u>, concluded that the provisions at issue are substantive under traditional <u>Erie</u> analysis and thus must be enforced in federal courts. <u>See Hogan</u>, 351 F. Supp. at 737–40; <u>Wester</u>, 974 F. Supp. at 1286–88. More recent decisions have simply adopted the conclusions of <u>Hogan</u> and <u>Wester</u> without considering <u>Shady Grove</u>'s impact. <u>See, e.g.</u>, <u>Guinn v. Praxair, Inc.</u>, 386 F. Supp. 3d 850, 877 n.12 (E.D. Mich. 2019); <u>Alsadi v. Intel Corp.</u>, No. CV-16-03738-PHX-DJH, 2019 WL 935670, at *1 (D. Ariz. Feb. 26, 2019). The court does not find this line of cases persuasive because, as set out below, the Federal Rules directly collide with § 55-7-13d(a)(2)'s 180-day notice period, precluding application of traditional <u>Erie</u> analysis in the manner employed by <u>Hogan</u> and <u>Wester</u>. <u>See Shady Grove</u>, 559 U.S. at 398; <u>Hanna</u>, 380 U.S. at 469–70.

whether the scope of the Federal Rule is "sufficiently broad to cover the point in dispute." <u>Id.</u>; <u>see also</u> <u>Burlington N.</u>, 480 U.S. at 969 ("The initial step is to determine whether, when fairly construed, the scope of [the] Federal Rule . . . is 'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of that law." (quoting <u>Walker v. Armco Steel Corp.</u>, 446 U.S. 740, 749–50 & n.9 (1980))).  In this analysis, the Federal Rules "should be given their plain meaning" and are not "to be narrowly construed in order to avoid a 'direct collision' with state law." <u>Walker</u>, 446 U.S. 750 n.9.

Here, the question in dispute is: When must a defendant notify the plaintiff of its belief that nonparties are wholly or partially at fault for contributing to the plaintiff's damages so that the nonparties' fault may be considered by the trier of fact?  Section 55-7-13d answers that such notice must be provided "no later than" 180 days after service of process. W. Va. Code. § 55-7-13d(a)(2).  Inasmuch as the notice serves a role that is equivalent to that of a pleading, the Federal Rules of Civil Procedure provide a different answer.

Rule 12 sets forth "the time for serving a responsive pleading," in which a defendant "must assert[]" "[e]very defense

18

to a claim for relief" raised in a plaintiff's pleading, as well as the time for filing a Rule 12(b) motion, which may "assert [certain] defenses." Fed. R. Civ. P. 12(a)-(b). These defenses can include the assertion that a nonparty is at fault for some or all of the damages claimed in the plaintiff's pleading. See Fed. R. Civ. P. 8(c); <u>Hardin v. Manitowoc-Forsythe Corp.</u>, 691 F.2d 449, 458 (10th Cir. 1982); <u>Resol. Tr. Corp. v. Ascher</u>, 839 F. Supp. 764 (D. Colo. 1993); <u>see generally</u> 61A Am. Jur. 2d <u>Pleading</u> § 300 (2020). Service of either a responsive pleading or a Rule 12(b) motion must be made on the plaintiff and thus notifies the plaintiff of such a defense. See Fed. R. Civ. P. 5(a)(1)(B), (D). Under Rule 12, the time for serving a responsive pleading is generally 21 days after service of the plaintiff's pleading,[6] but, if a Rule 12 motion is timely filed, the responsive pleading must be served within 14 days of notice of the court's action on the motion or the service of a more definite statement. See Fed. R. Civ. P. 12(a)(4). The period for serving an answer can be extended by court order, <u>see</u> Fed. R. Civ. P. 6(b), or by the parties' stipulation, <u>see</u> LR Civ P 12.1. A Rule 12(b) motion must be filed before the deadline for

---

[6] The time for serving an answer may be longer if the defendant has timely waived service, if the defendant is the United States or a United States agency, officer, or employee, or if the pleading is sent outside any federal judicial districts. <u>See</u> Fed. R. Civ. P. 12(a)(1)(A)(ii), (2)-(3).

filing a responsive pleading expires.  <u>See</u> Fed. R. Civ. P.
12(b).

       Under Rule 15, a defendant may amend its responsive
pleading once as a matter of course within 21 days after serving
it and may amend it thereafter "with the opposing party's
written consent or the court's leave," which should be "freely
give[n] . . . when justice so requires."  Fed. R. Civ. P.
15(a)(1)-(2).  In some circumstances, the responsive pleading
may be amended during the course of trial, and the parties may
even proceed to try issues not expressly raised in any pleading.
<u>See</u> Fed. R. Civ. P. 15(b).

       Here, the court concludes that the Federal Rules are
in direct collision with § 55-7-13d(a)(2).  The Federal Rules
governing pleadings are sufficiently broad to cover the point in
dispute.  Under the Federal Rules, a defendant must notify the
plaintiff of its belief that nonparties are wholly or partially
at fault for contributing to the plaintiff's damages within the
time period set forth in Rules 12 and 15 governing the service
of responsive pleadings.  These Rules control the issue and
leave no room for the operation of § 55-7-13d(a)(2)'s 180-day
time period.  The time periods provided by the Federal Rules may
be much shorter or, due to their capacity to be extended through
various means, much longer than the state statute's 180-day

period, which does not by its terms appear amenable to any extension.  See W. Va. Code. § 55-7-13d(a)(2) (requiring notice to be provided "no later than" 180 days after service of process (emphasis added));[7] see also Davis v. Piper Aircraft Corp., 615 F.2d 606, 611 & n.8 (4th Cir. 1980) (explaining that a federal rule is "quite as broad in scope as [a] conflicting state rule" when "it operates to cure" a defect that would not be curable under the state rule).

The court will not apply a state law that directly collides with the Federal Rules unless the Federal Rules at issue do not comport with the Rules Enabling Act or constitutional requirements.  See Shady Grove, 559 U.S. at 398; Burlington N., 480 U.S. at 5; Hanna, 380 U.S. at 470–74.  There is no suggestion that the Federal Rules at issue here exceed constitutional bounds, so the court need only determine whether they are consonant with the Rules Enabling Act to the extent the plaintiff claims they are not.  See Davis, 615 F.2d at 612.

In Shady Grove, the Supreme Court considered what test should be used to analyze whether a Federal Rule violates the Rules Enabling Act.  Two tests were advanced, neither of which

---

[7] It does not appear that the West Virginia Supreme Court of Appeals has had an opportunity to consider the 180-day period or specifically whether the period may be extended.

commanded a majority.  Writing for a four-member plurality,
Justice Scalia concluded that the correct test, first expressed
in <u>Sibbach</u>, is whether the Federal Rule itself "'really
regulates procedure,-the judicial process for enforcing rights
and duties recognized by substantive law and for justly
administering remedy and redress for disregard or infraction of
them.'"  <u>Shady Grove</u>, 559 U.S. at 407 (plurality opinion)
(alteration omitted) (quoting <u>Sibbach</u>, 312 U.S. at 14).  Thus,
in the plurality's view expressed by Justice Scalia, "[t]he
test" focuses on "what the [Federal] [R]ule itself regulates:
If it governs only 'the manner and the means' by which the
litigants' rights are 'enforced,' it is valid; if it alters 'the
rules of decision by which the court will adjudicate those
rights,' it is not."  <u>Id.</u> (brackets omitted) (quoting <u>Miss.
Publ'g Corp. v. Murphree</u>, 326 U.S. 438, 445 (1946)).

        Writing for himself in a concurrence, Justice Stevens
advanced a different test that focuses on the state law at
issue.  Pointing to the Rules Enabling Act's requirement that
the Federal Rules "'not abridge, enlarge or modify <u>any</u>
substantive right,'" <u>id.</u> at 422 (Stevens, J., concurring)
(emphasis added in <u>Shady Grove</u>) (quoting 28 U.S.C. § 2072(b)),
he concluded that "[a] [F]ederal [R]ule . . . cannot govern a
particular case in which the [R]ule would displace a state law

Case 2:18-cv-01230   Document 204   Filed 12/08/20   Page 23 of 35 PageID #: 5637

that is procedural in the ordinary use of the term but is so
intertwined with a state right or remedy that it functions to
define the scope of the state-created right," id. at 423.  Of
course, "[f]aced with a [F]ederal [R]ule . . . that displaces a
state rule, one can often argue that the state rule was really
some part of the State's definition of its rights or remedies";
and so, "it is necessary to distinguish between procedural
rules" that "ha[ve] some effect on the outcome of litigation"
and those "that are intimately bound up in the scope of a
substantive right or remedy."  Id. at 432–33 (emphasis in
original).  Because, in Justice Stevens' estimation, "few
seemingly 'procedural' rules [will] define the scope of a
substantive right or remedy," id. at 428; see also id. at 428
n.13 (noting that nominally "'procedural'" state rules that
"operate to define the rights and remedies available in a case"
are "rare"), a litigant arguing that a Federal Rule violates the
Rules Enabling Act faces a "high" "bar" id. at 432.[8]

The Fourth Circuit has not yet addressed, in a
published decision, Shady Grove's splintered opinions regarding

---

[8] Writing for the remaining four members of the Court, Justice
Ginsburg found no collision between the Federal Rule and the
state law at issue and thus did not address what test should be
applied to determine when a Federal Rule violates the Rules
Enabling Act and instead employed traditional Erie analysis to
the state law.  See Shady Grove, 559 U.S. at 446, 452, 456
(Ginsburg, J., dissenting).

the test to be used for determining when a Federal Rule violates the Rules Enabling Act.  In an unpublished decision, however, the Fourth Circuit applied the plurality's test without addressing Justice Stevens' test or discussing which test controls.  See Corradi v. Old United Cas. Co., 675 F. App'x 296, 299 (4th Cir. 2017).  Some other courts have similarly applied the plurality's test with little or no commentary regarding Justice Stevens' alternative test.  See 19 Charles Alan Wright et al., Federal Practice and Procedure § 4509 & n.114 (3d ed. 2020) (collecting cases from, inter alia, the Second, Third, and Ninth Circuits).  Notably, then-Judge Kavanaugh, writing for the court in a District of Columbia Circuit decision, concluded that neither test is controlling under Marks v. United States, 430 U.S. 188 (1977).  See Abbas v. Foreign Policy Grp., LLC, 783 F.3d 1328, 1336–37 (D.C. Cir. 2015).  In his view, the Sibbach standard, which is nearly identical to the plurality's test, remains controlling.  See id. at 1337.  Still other courts have concluded that, pursuant to Marks, Justice Stevens' concurrence, which provides the narrowest basis for the Shady Grove decision, constitutes the controlling test, see Wright et al., § 4509 & n.112 (collecting cases from, inter alia, the First, Sixth, Eighth, and Tenth Circuits).

While the court finds the plurality's test persuasive, the court need not determine which test is controlling. Because, as explained below, the Federal Rules at issue here comport with the Rules Enabling Act under either test, it is unnecessary to decide which <u>Shady Grove</u> opinion controls.  <u>See Lisk v. Lumber One Wood Preserving, LLC</u>, 792 F.3d 1331, 1336 (11th Cir. 2015).  Declining to make this determination "comports with the general preference for avoiding unnecessary rulings," a preference that is "especially appropriate" where applying the <u>Marks</u> rule, an already "difficult" endeavor, does not appear to alleviate uncertainty.  <u>Id.</u> at 1337.[9]

With respect to the plurality's test, the plaintiff does not argue that the Federal Rules at issue here do not "'really regulate procedure.'"  <u>Shady Grove</u>, 559 U.S. at 411 (plurality opinion) (quoting <u>Sibbach</u>, 312 U.S. at 14).  The plaintiff's failure to advance the argument is sufficient, by itself, for the court to not disturb the presumption that these Federal Rules comport with the Rules Enabling Act.  <u>See Davis</u>, 615 F.2d at 612; <u>see also Burlington N.</u>, 480 U.S. at 6 (noting the "presumptive validity" of the Federal Rules "under both the

---

[9] "The Supreme Court can avoid th[is] dilemma by simply reconsidering the issue that fragmented the Court originally," an option not available to the lower courts.  <u>Lisk</u>, 792 F.3d at 1337.

constitutional and statutory constraints"). Moreover, the court
has no trouble concluding that the Federal Rules concerning the
timing of pleading defenses "govern[] only 'the manner and the
means' by which the litigants' rights are 'enforced,'" rather
than "alter[] 'the rules of decision by which the court will
adjudicate those rights,'" and thus do not violate the Rules
Enabling Act. Shady Grove, 559 U.S. at 411 (plurality opinion)
(quoting Miss. Publ'g, 326 U.S. at 445); see also Estate of
Burns ex rel. Vance v. Cohen, No. 5:18-cv-00888, 2019 WL
4463318, at *3–4 (S.D.W. Va. Sept. 17, 2019) (Berger, J.)
(applying the plurality's test and finding § 55-7-13d(a)(2)'s
timing requirement to be procedural and not substantive).

        With respect to Justice Stevens' test, the plaintiff
does not clearly argue that displacing § 55-7-13d(a)(2)'s 180-
day notice period by enforcing the Federal Rules in this case
would abridge, enlarge, or modify a substantive state right and
thus violate the Rules Enabling Act. However, some of the
plaintiff's arguments may be understood to assert that the 180-
day period is so intertwined with West Virginia's comparative
fault statute that it is intimately bound up with state-created
substantive rights. The plaintiff makes the plausible argument
that the purpose of the 180-day period is to identify all the
potential parties and nonparties at fault by a given time so

that a plaintiff may make informed claim-settlement decisions
with an eye toward a recovery amount that is somewhat dependent
on the number and degree of potential liability of identified
nonparties.  See Courtland I, ECF No. 142 at 9–10.  Because a
defendant's ability to assert nonparty fault may ultimately
affect a plaintiff's amount of recovery, which may in turn
affect a plaintiff's claim-settlement decisions, the plaintiff
argues that the statute's time constraints on that ability are
substantive in nature.  See id.[10]

     The court concludes that § 55-7-13d(a)(2)'s 180-day
notice period is not one of those rare state laws that, though
seemingly procedural, is so intertwined with a state right or
remedy that it functions to define the scope of a state-created
right.  Although enforcement (or non-enforcement) of the notice
period may affect litigation and settlement outcomes, it does
not change a defendant's entitlement to a reduction in the
recovery against it; instead, it merely delineates when that
entitlement must be asserted.  More importantly, it in no way
alters a plaintiff's entitlement to substantive rights provided

---

[10] The plaintiff might also be understood to be arguing that §
55-7-13d(a)(2) must be considered substantive rather than
procedural under traditional Erie analysis.  See Courtland I,
ECF No. 142 at 7–11.  However, the court does not engage in that
analysis where, as here, the Federal Rules directly collide with
the state law at issue.  See Shady Grove, 559 U.S. at 398;
Hanna, 380 U.S. at 469–70.

by West Virginia law.  In a roughly analogous context, courts
have ruled that a statutory requirement that the plaintiff
provide notice to the state's attorney general before commencing
a class-action antitrust suit does not run afoul of Justice
Stevens' test because the notice requirement, although it may
affect the ultimate outcome of litigation, does not alter the
plaintiff's entitlement to assert antitrust claims.  See In re
Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.,
355 F. Supp. 3d 145, 155-56 (E.D.N.Y. 2018) (citing In re
Propranolol Antitrust Litig., 249 F. Supp. 3d 712, 728 (S.D.N.Y.
2017); In re Aggrenox Antitrust Litig., 94 F. Supp. 3d 224, 254
(D. Conn. 2015)); In re Broiler Chicken Antitrust Litig., 290 F.
Supp. 3d 772, 817–18 (N.D. Ill. 2017).  Likewise, here, although
the enforcement of the 180-day period might affect the
litigation's outcome as the plaintiff claims, it does not alter
either party's entitlement to a substantive right.

        Several additional factors that Justice Stevens found
pertinent further demonstrate that § 55-7-13d(a)(2)'s 180-day
notice period is not sufficiently intertwined with a state right
or remedy that it functions to define the scope of a state-
created right.  First, on its face, the 180-day notice period
sets a deadline for providing notice, a classic example of a
procedural rule.  See Stewart v. Iancu, 912 F.3d 693, 700 (4th

Cir. 2019) ("[M]ost time bars are 'quintessential claim-processing rules,' which 'promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times.'" (quoting <u>Henderson v. Shinseki</u>, 562 U.S. 428, 435 (2011))); <u>see also</u> <u>Shady Grove</u>, 559 U.S. at 432 (Stevens, J., concurring) ("The mere fact that a state law is designed as a procedural rule suggests it reflects a judgment about how state courts ought to operate and not a judgment about the scope of state-created rights and remedies.").

Second, like the rest of West Virginia's comparative fault statute, § 55-7-13d(a)(2) does not apply to a specific statutory or common-law cause of action or to a discrete class of claims but, instead, applies broadly, with certain exceptions, to "<u>any</u> action based on tort or <u>any</u> other legal theory seeking damages for personal injury, property damage, or wrongful death." W. Va. Code § 55-7-13a(b) (emphasis added). Under Justice Stevens' test, a state law or rule that is not tied to a particularized right or cause of action is less likely to define a state-created right or remedy. See <u>Shady Grove</u>, 559 U.S. at 433 (Stevens, J., concurring); <u>see also</u> <u>Stender v. Archstone-Smith Operating Tr.</u>, 958 F.3d 938, 947 (10th Cir. 2020) (explaining that "general cost-shifting statutes that

apply in every case" do not "indicate[] a [state's] judgment
about the scope of state-created rights or remedies"); <u>Whitlock</u>
<u>v. FSL Mgmt., LLC</u>, 843 F.3d 1084, 1092 (6th Cir. 2016) (assuming
state law is substantive in part because it "only applies to
claims brought under the Kentucky Wage and Hour Act, and it
appears within the same statutory provision that creates the
private cause of action").

        Third, the plaintiff has not pointed to any
legislative history, nor is the court aware of any, suggesting
that the 180-day period was adopted to "define[] the dimensions
of a claim itself," rather than merely "adopted for <u>some</u> policy
reason" that incidentally "has some effect on the outcome of
litigation," as nearly any procedural device will have.  <u>Shady</u>
<u>Grove</u>, 559 U.S. at 433 (Stevens, J., concurring) (emphasis in
original) (internal quotation marks and brackets omitted).
Justice Stevens' test does not "dismiss the possibility" that
state lawmakers sought to achieve policy objectives other than
defining the dimensions of rights and remedies.  <u>Id.</u> at 433–35.

        Ultimately, the court must have "<u>little doubt</u>" that §
55-7-13d(a)(2)'s 180-day notice period reflects West Virginia's
"judgment about the scope of state-created rights and remedies"
such that displacing it with "a [F]ederal [R]ule would alter a
state-created right."  <u>Id.</u> at 432 (emphasis added).  This "high"

"bar" for concluding that the 180-day notice period is one of those "rare" state laws masquerading as a procedural rule that, in fact, is "so intertwined with a state right or remedy that it functions to define the scope of the state-created right" has not been met here.  Id. at 423, 428 n.13, 432.

The court concludes that, under either Shady Grove test, the 180-day period set by § 55-7-13d(a)(2) does not apply in this federal lawsuit.  The plaintiff's argument that the defendant's notices should be stricken based on application of § 55-7-13d(a)(2)'s time period fails.

### (2)   *Notice contents*

Lastly, the plaintiff argues that the defendant's notices do not comply with West Virginia's comparative fault statute because they run afoul of § 55-7-13d(a)(2)'s requirement that the defendant "give[] notice . . . that a nonparty was wholly or partially at fault."  W. Va. Code § 55-7-13d(a)(2) (emphasis added).  The plaintiff points out that all the defendant's notices state that either unnamed or the three named nonparties "may be wholly or partially at fault."  Courtland I, ECF No. 37 at 1 (emphasis added); accord id., ECF No. 139 at 1; Courtland II, ECF No. 53 at 1.  In the plaintiff's view, the notice contemplated by § 55-7-13d(a)(2) requires the defendant to do more than speculate about a nonparty's fault; it requires

the defendant to assert that the nonparty <u>was</u> in fact at fault for the damages claimed.  The defendant responds that its use of "may be" rather than "was" is merely a matter of semantics and that its notices sufficiently apprise the plaintiff of the information required for compliance with § 55-7-13d(a)(2). Neither party cites any authority for their positions.

Based on the language of the statute, the court concludes that the plaintiff's argument is without merit. Section 55-7-13d(a)(2) contains two sentences.  The first sentence imposes the requirement to provide timely notice in order for the fault of a nonparty to be considered by the trier of fact pursuant to subsection (a)(1).  <u>See</u> W. Va. Code § 55-7-13d(a)(2).  It is in this sentence that the notice is described as a "notice . . . that a nonparty was wholly or partially at fault."  <u>Id.</u>  The second sentence, however, specifies to whom the notice must be provided — it must be "filed with the court and served upon all parties" — and it specifies the contents of the notice.  <u>See id.</u>  The second sentence specifies exactly what the notice must "designat[e]" — "the nonparty" at fault — and exactly what information the notice must "set[] forth," namely, (1) "the nonparty's name and last known address[] or the best identification of the nonparty which is possible under the

circumstances" and (2) "a brief statement of the basis for
believing such nonparty to be at fault."  Id.

In the court's view, § 55-7-13d(a)(2)'s more specific
second sentence controls what content must be included in the
notice.  The second sentence, unlike the first, expressly states
what must be "set[] forth" in the notice, id., and does not
include a requirement that the notice employ talismanic phrases
such as "was at fault" or only non-speculative language
regarding the nonparty's fault, see id. (requiring the notice to
"set[] forth . . . a brief statement of the basis for believing
such nonparty to be at fault" (emphasis added)).  The mere fact
that the first sentence describes the notice as a notice that a
nonparty was partially or wholly at fault does not overcome the
more specific language of the provision expressly stating what
the notice must set forth.  See Strawser v. Atkins, 290 F.3d
720, 733 (4th Cir. 2002) ("'It is a well-settled principle of
construction that specific terms covering the given subject
matter will prevail over general language of the same . . .
statute which might otherwise prove controlling.'" (quoting
Kepner v. United States, 195 U.S. 100, 125 (1904))); cf. Norman
Singer & Shambie Singer, 1A Sutherland Statutory Construction §
20:7 (7th ed. 2019) ("The presumption is that the statute flows
in orderly progression from general statement to specific

33

instance so that ordinarily the qualification of a later clause
upon an earlier one is to be expected.").  Accordingly, the
plaintiff's argument that the defendant's notices should be
stricken for failing to state that each of the nonparties "was"
at fault or for employing speculative language fails.

In sum, the court concludes that the plaintiff has not
provided a reason for the court to strike the defendant's
notices based on the defendant's failure to comply with § 55-7-
13d's timing requirements and on the content of the notices.

### IV.   Conclusion

For the foregoing reasons, it is ORDERED that the
plaintiff's motion to strike the defendant's notice regarding
potential nonparty fault and supplemental notice regarding
potential nonparty fault, (Courtland I, ECF No. 140) and the
plaintiff's response to and motion to strike the defendant's
notice regarding potential nonparty fault, (Courtland II, ECF
No. 55) be, and hereby they are, denied.[11]

_____

[11] The court notes that, although the initial notice in Courtland
I was filed before the deadline set for amending the pleadings,
the supplemental notice in Courtland I as well as the notice in
Courtland II were filed after that deadline.  See Courtland I,
ECF No. 37; ECF No. 131; ECF No. 139; Courtland II, ECF No. 23;
ECF No. 53.  In light of the court's ruling, the court will
entertain motions for leave to amend the pleadings insofar as
the defendant chooses to file them.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: December 8, 2020

John T. Copenhaver, Jr.
Senior United States District Judge