UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

THE COURTLAND COMPANY, INC.,
a West Virginia Business Corporation,

      Plaintiff,

v.                                         Civil Action No. 2:18-cv-01230

UNION CARBIDE CORPORATION,
a New York Corporation,

      Defendant.

MEMORANDUM OPINION AND ORDER

Pending is the plaintiff's renewed motion for partial summary judgment, filed on November 3, 2020 (ECF No. 178). The motion is confined to the plaintiff's Count I "CERCLA" claim.

I. Background

The plaintiff commenced this action by filing a complaint on August 15, 2018. See ECF No. 1. The complaint alleges that the plaintiff is a corporation that owns a parcel of real property abutting Davis Creek in Kanawha County, West Virginia, and that the defendant is a corporation that owns a nearby parcel of real property called the "UCC Tech Center."[1]

---

[1] The property has also been referred to as the "UCC Facility," the "West Virginia Regional Technology Park," the "South Charleston Technology Park," and the "Technology Park."

See id. ¶ 4-5.  The plaintiff alleges that the defendant has used the UCC Tech Center to store hazardous and toxic materials, which have been released into the nearby environment including the plaintiff's property.  See id. ¶¶ 1, 14-46.  Based on these allegations, the plaintiff asserts the following federal- and state-law causes of action: recovery of response costs and declaratory relief under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9607(a), 9613(g) (Count I); citizen suit relief for violations of § 7002(a)(1)(A) of the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § 6972(a)(1)(A), and the West Virginia Hazardous Waste Management Act (Count II); citizen suit relief for judicial abatement of an imminent and substantial endangerment under § 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B) (Count III); judicial abatement of a public nuisance (Count IV); private nuisance (Count V); negligence (Count VI); gross negligence (Count VIII); and strict liability (Count IX).  See id. ¶¶ 47–108.[2]

In a related case, Courtland Co., Inc. v. Union Carbide Corp. ("Courtland II"), No. 2:19-cv-00894 (S.D.W. Va.),

---

[2] By a September 29, 2020 memorandum opinion and order, the court granted in part the defendant's motion to dismiss the plaintiff's complaint and dismissed the plaintiff's Count VII claim for negligence per se.  See ECF No. 163.

the plaintiff filed a similar complaint against the defendant relating to two other parcels of real property, called the Filmont Site and the UCC Railyard, both of which are adjacent to the plaintiff's property. See Courtland II, ECF No. 1. As in this case, the plaintiff alleges in Courtland II that the defendant owns the Filmont Site and the UCC Railyard and has used them to store hazardous and toxic materials, which have been released into the nearby environment including the plaintiff's property. See id. The Courtland II complaint asserts the same claims as those the plaintiff asserts in this case plus an additional claim for judicial abatement of a public nuisance per se. See id.[3]

On August 2, 2019, the plaintiff filed a motion for partial summary judgment on its Count I CERCLA claim and its Count IV public nuisance claim. See ECF No. 79. In response, the defendant argued that the motion should be denied on the merits, or, in the alternative and pursuant to Fed. R. Civ. P. 56(d), that a ruling on the merits should be delayed to allow for necessary discovery. See ECF No. 87. In an August 23, 2019 order, the court agreed with the defendant that further

---

[3] As in this case, the court dismissed the Courtland II complaint's claim for negligence per se. See Courtland II, ECF No. 75.

discovery was appropriate and denied the plaintiff's motion for partial summary judgment on the ground that it was premature. See ECF No. 89.

On November 3, 2020, the plaintiff filed the current renewed motion for partial summary judgment on its Count I CERCLA claim. See ECF No. 178.[4] In response, the defendant again argues that the motion should be denied on the merits or, alternatively, that, pursuant to Rule 56(d), further discovery is needed before the court rules on the motion's merits. See ECF No. 194. The motion has been fully briefed and is ready for disposition.[5]

## II. Legal Standard

Summary judgment is appropriate "if the movant shows

---

[4] The plaintiff had filed another motion for partial summary judgment on its Count I CERCLA claim on September 23, 2020, see ECF No. 163, but, on October 5, 2020, filed a motion to withdraw it, which the court granted, see ECF No. 167; ECF No. 168.

[5] The renewed summary-judgment motion also precipitated several challenges to each party's evidentiary submission. The defendant filed objections or, in the alternative a motion to strike the plaintiff's evidence relating to the Filmont Site and the UCC Railyard. See ECF No. 192. The plaintiff filed objections to portions of three declarations the defendant submitted in support of its memorandum in opposition to summary judgment. See ECF No. 210. And, the defendant filed a motion to strike the plaintiff's objections. See ECF No. 211. The court addresses these motions in a separate order.

4

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  In deciding a motion for summary judgment, the court must view the evidence and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party.  See Tolan v. Cotton, 572 U.S. 650, 651, 657 (2014) (per curiam).

Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to the motion, the court may deny the motion, defer consideration, allow further discovery, or take other appropriate action.  Fed. R. Civ. P. 56(d).  Thus, if a nonmovant believes further discovery is necessary for its opposition to summary judgment, the proper course is to submit "a Rule 56(d) affidavit that outlines the need for discovery and what additional facts [the nonmovant] hope[s] to uncover through discovery to properly defeat summary judgment," Dave & Buster's, Inc. v. White Flint Mall, LLLP, 616 F. App'x 552, 561 (citing Evans v. Techs. Applications & Serv.

Co., 80 F.3d 954, 961 (4th Cir. 1996)), or to otherwise "put the district court on notice as to which specific facts are yet to be discovered," McCrary v. Md. Dep't of Transp., Md. Transit Admin., 741 F.3d 480, 485 (4th Cir. 2014).

A Rule 56(d) request should be granted "'where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition.'" McCrary, 741 F.3d at 484-85 (4th Cir. 2014) (quoting Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002)). "[S]uch motions are 'broadly favored and should be liberally granted' in order to protect non-moving parties from premature summary judgment motions." Id. at 485 (quoting Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt., 721 F.3d 264, 281 (4th Cir. 2013)).

III. Discussion

A.  Summary judgment must be denied on the merits.

The plaintiff seeks summary judgment only as to the complaint's Count I CERCLA claim. The parties agree regarding the analytical framework governing that claim. See ECF No. 180-1 at 21-23; ECF No. 194 at 11-12.

"CERCLA encourages private individuals to clean up

environmental hazards by permitting them to recover specified costs of cleanup from parties defined by CERCLA to be responsible for the hazards." Westfarm Assocs. Ltd. P'ship v. Wash. Suburban Sanitary Comm'n, 66 F.3d 669, 677 (4th Cir. 1995). "A private-party plaintiff establishes a prima facie case for cost recovery under CERCLA by establishing that (1) the defendant is a potentially responsible person ('PRP'); (2) the site constitutes a 'facility'; (3) a 'release' or a threatened release of hazardous substances exists at the 'facility'; (4) the plaintiff has incurred costs responding to the release or threatened release of hazardous substances ('response costs'); and (5) the response costs conform to the National Contingency Plan." PCS Nitrogen Inc. v. Ashley II of Charleston LLC, 714 F.3d 161, 167-68 (4th Cir. 2013).

The fourth element concerns causation. See Ashley II of Charleston, LLC v. PCS Nitrogen, Inc., 791 F. Supp. 2d 431, 479 (D.S.C. 2011) (stating the element requires proof "that the release or threatened release has caused the plaintiff to incur response costs" (emphasis added)). As the Fourth Circuit has explained,

> Contrary to the rule followed in most areas of the law, the burden of proof as to causation in a CERCLA case lies with the defendant. The plaintiff must prove only that contaminants which were once in the custody of the defendant could have travelled onto the plaintiff's land, and that subsequent contaminants

7

> (chemically similar to the contaminants once existing in defendant's custody) on the plaintiff's land caused the plaintiff to incur cleanup costs. The plaintiff need not produce any evidence that the contaminants did flow onto its land from the defendant's land. Rather, once [the] plaintiff has proven a prima facie case, the burden of proof falls on the defendant to disprove causation.
>
> . . . . Because the defendant bears the burden of proof as to causation, a defendant, to survive summary judgment, must come forward with sufficient evidence from which a jury could find that the defendant was not the source of the contamination.

Westfarm, 66 F.3d at 681 (emphasis in original); see also id. at 682 & n.8 (explaining that summary judgment for the plaintiff is inappropriate if the defendant's evidence "create[s] a genuine issue of material fact as to whether the defendant could disprove that it was the source of contamination at [the] plaintiff's site").

Although the defendant states that it does not concede that the plaintiff has established a prima facie case, it presents little argument that the plaintiff has failed to do so. See ECF No. 194 at 12 & n.4; id. at 14 n.6. Instead, the defendant chiefly argues that it has satisfied its burden to come forward with evidence from which the jury could find that it was not the source of contaminants on the plaintiff's property. See id. at 12-15 & nn. 4-6.[6]

---

[6] The defendant argues in passing that the same evidence demonstrates that the plaintiff has failed to show that the

8

With respect to its burden to demonstrate that it is not the source of contaminants on the plaintiff's property, the defendant advances two arguments. First, the defendant argues it has presented evidence that contaminants known to be located at the UCC Tech Center are not migrating to the plaintiff's property. The defendant asserts that two areas at the UCC Tech Center, called "Ward Hollow" and the "Greenhouse Area," have been identified as putative sources of contamination.[7] With respect to Ward Hollow, the defendant points to evidence – in the form of declarations from its expert, Peter de Haven, and its Fed. R. Civ. P. 30(b)(6) corporate designee, Jerome Cibrik – that contaminants from Ward Hollow cannot reach the plaintiff's property via groundwater, as the plaintiff has asserted, because the plaintiff's property is upgradient from Ward Hollow and because the groundwater plume emanating from Ward Hollow is too far from the plaintiff's property to carry contaminants there. See ECF No. 194-38 (hereinafter "de Haven Decl.") ¶ 16-17; ECF

---

alleged release from the UCC Tech Center caused the plaintiff to incur response costs for purposes of establishing its prima facie case. See ECF No. 194 at 14 n.6. Because the defendant has met its burden with respect to causation, the court declines to address the defendant's argument regarding the plaintiff's burden to establish a prima facie case.

[7] The plaintiff does not appear to dispute the defendant's identification of Ward Hollow and the Greenhouse Area as the putative sources of contamination. See, e.g., ECF No. 180-1 at 24.

No. 194-1 (hereinafter "Cibrik Decl.") ¶ 14.[8]

With respect to the Greenhouse Area,[9] the defendant points to Mr. de Haven's declaration, which states that, due to hydrogeological conditions, the Greenhouse Area is highly unlikely to be the source of contaminants on the plaintiff's property. See de Haven Decl. ¶¶ 7.c, 21, 43. Further evidence that the Greenhouse Area is not a source of contamination comes from comparing the composition of contaminants found at the Greenhouse Area with those found at the plaintiff's property. For instance, according to Mr. de Haven and Mr. Cibrik, contaminants are found in much higher concentrations at the plaintiff's property than at the Greenhouse Area, which is very unlikely if the Greenhouse Area is a source of the contaminants on the plaintiff's property. See de Haven Decl. ¶¶ 7.c, 21, 25, 28.d; Cibrik Decl. ¶¶ 17, 19. In a similar vein, Mr. de Haven and Mr. Cibrik state that several contaminants present at the Greenhouse Area are not present at the plaintiff's property, and vice versa, again a highly unlikely condition if the Greenhouse

---

[8] Although the plaintiff does not object to ¶ 14 of Mr. Cibrik's declaration, it does object to ¶¶ 16 and 17 of Mr. de Haven's declaration. See ECF No. 210. The court has addressed these objections in a separate order and has overruled them.

[9] The court understands that the Greenhouse Area is located on the portion of UCC Tech Center situated atop of a bluff that is south of and overlooks the plaintiff's property below.

Area is a source of contamination for the plaintiff's property. See de Haven Decl. ¶ 19, 25; Cibrik Decl. ¶ 17-18, 20.[10]

Second, the defendant argues it has presented evidence of a different source for the contaminants on the plaintiff's property. Specifically, the defendant points to evidence, as described in Mr. Cibrik's declaration, indicating that, for over the last seventy-five years or more, the plaintiff's property has been used to store coal and deposits of fly ash, both of which can contain the contaminants the plaintiff complains of. See Cibrik Decl. ¶¶ 22-27; see also ECF No. 194-10; 194-11.[11]

Based on the foregoing evidence – which, at this stage, the court views, along with all reasonable inferences drawn therefrom, in the light most favorable to the defendant – the court concludes that the defendant has carried its burden of coming forward with sufficient evidence from which a jury could find that it was not the source of the contamination on the plaintiff's property. Summary judgment may be denied on this

---

[10] The plaintiff does not object to ¶¶ 17, 18, 19, or 20 of Mr. Cibrik's declaration, but it does object to ¶¶ 7.c, 19, 21, 25, 28.d, and 43 of Mr. de Haven's declaration. See ECF No. 210. The court has addressed these objections in a separate order and has overruled them.

[11] The plaintiff does not object to ¶¶ 22, 23, 24, or 26 of Mr. Cibrik's declaration, but it does object to ¶¶ 25 and 27 of his declaration. See ECF No. 210. The court has addressed these objections in a separate order and has overruled them.

basis.

B. <u>Summary judgment is premature.</u>

Summary judgment may also be denied under Rule 56(d). As the defendant points out, at the time the plaintiff filed its motion for partial summary judgment, the parties had over four months of discovery remaining. <u>See</u> ECF No. 131. Recently, upon the parties' joint motion, the court has entered an order extending the discovery period.

The defendant argues that, at the time the current motion was briefed, it had not yet had an opportunity to conduct necessary discovery. Specifically, the defendant points out that, at the time the current motion was briefed, it had not had the opportunity to collect and test soil samples from the plaintiff's property. Indeed, the defendant filed a motion to compel an inspection and a sampling of the soil of the plaintiff's property – which the plaintiff opposed through briefing and a motion to strike the defendant's reply brief and evidence cited therein – and the Magistrate Judge granted the motion only after briefing on the current motion had completed. <u>See</u> ECF No. 164; ECF No. 173; ECF No. 176; ECF No. 199.

The defendant also states that it had not yet had the opportunity to depose the plaintiff's expert, Dr. D. Scott

Simonton. As the defendant observes, much of the evidence underpinning the plaintiff's current motion is in the form of an October 13, 2020 declaration from Dr. Simonton. See ECF No. 180-1 (citing Dr. Simonton's declaration throughout); ECF No. 180-3 (setting forth Dr. Simonton's October 13, 2020 declaration). As the defendant further observes, Dr. Simonton's October 13, 2020 declaration seems to be inconsistent with his July 18, 2019 declaration, which was filed in support of the plaintiff's initial motion for partial summary judgment, on the issue of causation. Compare ECF No. 79-2 ¶ 25 ("[T]he sole plausible source of the[] contaminants on the [plaintiff's] [p]roperty . . . is the migration of such contaminants from the [UCC Tech Center]."), with ECF No. 180-3 ¶¶ 51, 117, 169 (indicating that the contaminants at the UCC Tech Center, the Filmont Site, and the UCC Railyard may all be sources of contaminants on the plaintiff's property). The defendant argues that Dr. Simonton's deposition, which would address the issue of causation and the seeming inconsistencies in his declarations, should occur after the testing of soil samples from the plaintiff's property, as described earlier herein.

The defendant has submitted the declaration of its counsel, Patricia Bello, detailing the parties' discovery efforts in this matter and averring that the defendant had not

13

had the opportunity to conduct necessary discovery to oppose the current motion. See ECF No. 194-15.[12]

The court concludes that the defendant has shown that, at the time briefing was completed, it had not had the opportunity to discover information essential to its opposition to the current motion for partial summary judgment. The defendant has demonstrated, through its briefing and Ms. Bello's declaration, its plans to uncover through further discovery specific information, as outlined in the preceding paragraphs, that bears on the issue of causation. Accordingly, the court concludes that the defendant has satisfied the requirements of Rule 56(d) and that the plaintiff's current motion is premature.

IV. Conclusion

For the foregoing reasons, it is ORDERED that the plaintiff's renewed motion for partial summary judgment (ECF No.

---

[12] The plaintiff objects to ¶¶ 7, 8, and 10 of Ms. Bello's declaration, pursuant to Fed. R. Civ. P. 56(c)(2). See ECF No. 210. To the extent Ms. Bello's declaration is submitted to show, pursuant to Rule 56(d), that the defendant cannot present facts essential to its opposition without further discovery, the defendant's objection under Rule 56(c)(2) is misplaced. Rule 56(c)(2) allows a party to object that an opponent's evidence used to support or dispute a material fact for purposes of summary judgment cannot be presented in an admissible form. It has no application to an affidavit submitted for the purpose of showing that further discovery is needed pursuant to Rule 56(d).

178) be, and hereby it is, denied.[13]

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER: May 25, 2021

John T. Copenhaver, Jr.
Senior United States District Judge

---

[13] It is further ORDERED that the plaintiff's motion to exceed the page limitation for the memorandum in support of its renewed motion for partial summary judgment (ECF No. 179) be, and hereby it is, granted.

15